IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Jaime Marrero,                                     )
                                                   )    C/A No. 4:15-0517-MBS
                        Petitioner,                )
                                                   )
        vs.                                        )
                                                   )    **OPINION AND ORDER**
NFN Stevenson, Warden of Broad                     )
River Correctional Institution,                    )
                                                   )
                        Respondent.                )
_____    )

        Petitioner Jaime Marrero is an inmate in custody of the South Carolina Department of

Corrections.  Petitioner currently is housed at the Broad River Correctional Institution in Columbia,

South Carolina.  Petitioner, proceeding pro se, filed a petition for writ of habeas corpus on February

5, 2015, alleging that he is being detained unlawfully.  See 28 U.S.C. § 2254.

I. BACKGROUND

        Petitioner and several accomplices entered a convenience store on September 28, 2004, for

the purpose of robbing the premises.  Petitioner shot and killed the store's clerk during the course

of the incident.  The events were captured on a surveillance videotape.

        Petitioner was indicted in June 2006 for murder, in violation of S.C. Code Ann. § 16-3-10;

and attempted armed robbery, in violation of S.C. Code Ann. §16-11-330(A).   Petitioner faced

incarceration of thirty years to life without the possibility of parole on the murder charge, and a

maximum punishment of twenty years incarceration on the attempted armed robbery charge.  ECF

No. 18-2, 46-47.  On September 22, 2008, Petitioner proceeded to trial before the Honorable Lee S.

Alford.  Petitioner was represented by Public Defender Douglas Strickler and Assistant Public

Defender James Hunter May.

On September 25, 2008, at the urging of the trial judge, the solicitor offered Petitioner a plea deal in which the government agreed to recommend a forty year sentencing cap. Id. at 49. In addition, the solicitor agreed to work toward disposing of unrelated state charges and seeking a concurrent sentence in federal court, where Petitioner faced charges for possession with intent to distribute and distribution of five grams or more of cocaine base. ECF No. 18-2, 49-50; see United States v. Marrero, Cr. No. 3:06-0563-CMC.

The trial judge conducted a plea colloquy as follows, in relevant part:

THE COURT: Has anybody promised you anything other than that in order to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anybody threatened you, coerced you or forced you to plead guilty against your will?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the manner in which your attorneys have advised and represented you in these cases?

THE DEFENDANT: Yes, sir.

THE COURT: Have you and your attorneys fully discussed the charges against you?

THE DEFENDANT: Yes, sir.

THE COURT: Have your attorneys told you the witnesses and evidence the State has available to present at trial to prove your guilt? Of course, most of them have already been presented, but there are others that they have not yet presented, but have your attorneys gone over those potential witnesses and evidence that the State has available? Have they gone over that with you?

THE DEFENDANT: Yes, sir.

THE COURT: Has your attorney discussed with you any possible legal defenses that might be available to you if you complete your trial today?

2

THE DEFENDANT:  Excuse me?

THE COURT:  Have your attorneys discussed with you any possible legal defenses that would be available to you if we continued with the trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you told your attorneys the names of any and all witnesses you know of that your attorneys could subpoena and bring to trial to assist you in your defense at your trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  In other words, have you told them about any witnesses you know of that would be helpful to you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you today under the influence of any mind-altering substance, such as alcohol, drugs or prescription medications, which interfere with your judgment or ability to understand what you're doing in court today?

THE DEFENDANT: No, sir.

THE COURT:  Do you have any mental, emotional, or nervous condition that interferes with your judgment or ability to understand what you're doing in court today?

THE DEFENDANT:  No, sir.

THE COURT:  Are  you pleading guilty today of your own free will?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you, in fact, guilty of these two charges?

(Pause)

THE DEFENDANT:  Honestly, Your Honor, I — I — I am, but at — at the time when it happened, and this is the God honest — the God's honest truth, I was — I was not in my right mind.  I blacked out.  I came to after the shot was fired.

THE COURT:  Did — let me ask you this.

3

> THE DEFENDANT: I'm guilty.
>
> THE COURT: Let me ask you, again, are you guilty of these two charges?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And, of course, you had the benefit of the tapes and everything else that's been presented in this break, you understand?
>
> . . . .
>
> THE COURT: I find the decision of the defendant, Jaime Marrero, to plead guilty to these two charges to be made freely, voluntarily, and intelligently. He's had the representation of competent attorneys with whom he says he is satisfied. I find the facts presented to the Court by way of trial and otherwise today by the Solicitor's Office fully support and substantiate the guilty pleas in this case, and I'll accept the pleas which were freely and voluntarily made.

ECF No. 18-2, 51-55.

After finding Petitioner's guilty plea to be knowing and voluntary, the trial judge informed Petitioner that he had ten days to appeal the proceeding. Id. at 55. After hearing from family members and Petitioner, the trial judge stated:

> You know, the court is satisfied of your guilt in this case. I will tell you that I do not recall – and I've tried many murder cases, but I don't recall ever giving less than life without parole in a case where a person was shot, had no way to defend themselves. I can't remember ever giving anything less than life without parole. That's probably – if a jury had come back with a conviction, that's probably what I would have given you. I can't remember ever not doing that, okay.

Id. at 62.

The trial judge thereafter sentenced Petitioner to incarceration for a period of thirty-eight years for murder and twenty years for attempted armed robbery. The trial judge stated:

> This sentence will run concurrent . . . with . . . the federal sentence that he has pending if he's able to serve it first. I have no way of knowing that. If he's able to serve it first, this, of course, will be running concurrent. If not, then this would be consecutive. He wouldn't serve the federal one until he served this one now. He's given credit for all jail time served in this case.

4

Id. at 63.

Petitioner did not file a direct appeal. On April 7, 2009, Petitioner filed an application for post-conviction relief (PCR) in the Court of Common Pleas for Richland County, South Carolina. Petitioner raised the following grounds for relief:

> 9A) I feel that my attorney, Jim May, was ineffective for two reasons. One; he did not object during my trial when the solicitor continuously led his witnesses during trial testimony. My attorney also failed to get proper expert witnesses relating to Hannah Fuller's testimony.[1] Hannah Fuller has an extensive medical history of mental illness, in which a doctor's opinion would have rendered a different outcome, in my trial. Two; after I sat in county jail for two and a half years, I tried to advise my attorney on circumstances, that in the least, he may have used in plea bargaining. My attorney stopped me from giving him this information. As a result, during the trial, Mr. May came to me with an on the spot deal after explaining to me that I was going to lose the trial and get life imprisonment. After telling me this I stopped the trial and took the plea so that I could return to my family one day. For these reasons, I believe Mr. May was ineffective.

> 9B) During my plea hearing, Judge Alford, told me that I had 10 days to appeal the court's decision. In State v. O'Leary, 393 SE2d 186, 302 SC 17, and State v. Truesdale, the judge was found in error by saying these same words as Judge Alford. Guilty pleas cannot have conditions on them. When the judge said this he put false hope in the air that mistakes were made and that a better deal may be available. In the above stated cases the trial was remanded I feel that my trial should be remanded, as well.

> Also, Judge Alford denied my attorney's motion for a continuance after the solicitor surprised us with witness testimony by Hannah Fuller. We did not know that Mrs. Fuller was coming to testify. If my attorney had known this he would have had a doctor to testify on her mental illness, discrediting Mrs. Fuller's testimony. The solicitor sprung this on us a day before the trial. I feel Judge Alford was also at error in my trial.

ECF No. 18-2, 34.

Petitioner subsequently amended his PCR application on November 16, 2012, as follows:

---

[1] Although the court does not have the benefit of the trial transcript prior to the change of plea, it appears that Petitioner told Ms. Fuller he had murdered someone. ECF No. 18-2, 87-88.

1) Jud[g]e Alford violated Rule 501 of the South Carolina Code of Laws (Canon #3) A judge shall perform duties of judicial office impartially and diligently. Did Judge Alford violate my constitutional rights when he admits his impartiality, to my attorney and to the solicitor and was Mr. James May or Mr. Strickler ineffective for failing to make an objection or ask for the judge to recuse himself?

2) Was James May's stewardship ineffective for failing to have a mental evaluation done on client to determine whether [or] not he was competent to stand trial or at the said commission of the crime?

3) Was Mr. James May ineffective for convincing his client that his only chance to see his son again, was to take the plea offered and for predicting what the jury would decide on?

4) Was a condition placed on this plea when client was convinced that he would be serving his federal sentence first which his state sentence would be ran concurrent?

5) Was Mr. James May ineffective for convincing his client that no errors were made and that there was no need to excersize *[sic]* his rights to appeal.

ECF No. 18-2, 36-38.

The Honorable G. Thomas Cooper held a PCR hearing on January 14, 2013. Petitioner was represented by Ethan R. Ware and Amber Matella of the South Carolina Bar. On direct examination, trial counsel testified that there was never any indication that Petitioner had any kind of mental defect to warrant a mental health evaluation. Id. at 80. Trial counsel testified that viewing the videotape of the killing, he did not believe anyone would have ever not found Petitioner criminally responsible. Id. at 94. According to trial counsel,

On the video two masked men enter the video. The clerk comes into the video screen. The clerk is pistol whipped, asked – the person asked to give money, asked time and time give me the money, the masked man does, at which time the victim . . . says I said no. And the lighter skinned male says fine, pulls the trigger, and the victim drops right there on the floor.

Id. at 96.

Trial counsel testified that the trial judge, in light of the videotape, questioned why Petitioner

6

was going to trial rather than pleading guilty.  Id. at 97.  Trial counsel stated that he told the trial judge that Petitioner was not one of the masked men on the video.  However, a few days into trial, the trial judge called trial counsel and the solicitor back into chambers and told the solicitor to make a plea offer.  Id.  According to trial counsel, "[The trial judge] said with the way the trial is going and with Ms. Fuller's testimony about [Petitioner's] remorse, please make, this boy needs to get an offer."  Id. at 98.  The solicitor thereafter offered Petitioner a sentence cap of forty years incarceration.  Id. at 98.  According to trial counsel, "[The trial judge] said that[] sounds like fair. I can't tell you what I want to give him, but that sounds like a fair offer."  Id. at 101.

Trial counsel told Petitioner to take the deal if he was guilty, but reject it if he was not guilty. Id. at 99.  According to trial counsel, "He's like, well, last night you said we were going to try to win. And I said, well, we're going to try to win; but if you did this, you need to get, you need to be a free man to see your child at some point.  However, if you didn't, you don't need to plea to this at which point I believe he started crying."  Id. at 100.

With regard to the federal offense, trial counsel testified that he and Petitioner talked extensively about the charge during trial preparation.  Trial counsel recalled that the trial judge told Petitioner that, if he was in state custody, he would do his state custody before serving his federal sentence.  Id. at 105.  Trial counsel stated that he worked actively to try to get Petitioner into federal custody so that he could serve his time concurrently with his state sentence.  Id. at 106.

PCR counsel raised an issue at the PCR hearing regarding testimony elicited by the solicitor from Hannah Fuller.  PCR counsel noted a number of instances in the transcript of trial wherein the solicitor was leading the witness, and inquired as to why trial counsel did not object.  Id. at 110-11. Trial counsel indicated that initially objections were interposed as to leading, but "Judge Alford was

going to let [the solicitor] lead." Id. at 111.  Trial counsel stated that objecting to leading would

highlight a question that was objectionable only as to its form and not as to its substance.  Id. at 134-

35.  Trial counsel also testified that he could not recall whether he discussed with Petitioner after the

change of plea proceeding his right to appeal.  Id. at 115.  Trial counsel testified, "It's generally my

practice that whenever I met with somebody that we would [discuss the right to appeal].  However,

we'd always tell them, however, if we don't raise an objection there's really nothing to appeal." Id.

at 131-32.

Petitioner testified at the PCR hearing that he had a difficult childhood and required

counseling as the result of a neighbor trying to molest him.  Id. at 141.  Petitioner testified that he

had served in the Navy during the Iraqi war, and that his wife had an affair during that time.

Petitioner stated that trial counsel never asked about these incidents and never asked if Petitioner had

been to counseling.  Petitioner further testified that he had been placed on suicide watch after he had

been arrested, and that he did not remember anything about the day of the killing.  Id. at 145.

Petitioner testified that on the third day of trial, he was told of the discussion in chambers

among the trial judge, trial counsel, and the solicitor regarding a plea offer for a cap of forty years

incarceration.  Petitioner stated trial counsel told him that he had a "99.9 percent chance of walking

out [of] here with a life sentence and you have a .1 percent of getting a hung jury and that's not

likely." Id. at 146.  According to Petitioner, he was told "[Y]ou know, if you want to see your son

again, . . . this is going to be your only chance to get back to your son." Id. at 147.  Petitioner

testified he was only given a short time to consider the plea agreement.  Id.  Petitioner stated he felt

pressured by the court and by trial counsel to enter into a plea agreement.  Id. at 153.

Petitioner testified that he was adamant about having concurrent state and federal sentences

8

as a condition of a guilty plea, and that trial counsel "said do not worry, I'll get you into federal custody and . . . you will be running that time concurrent. We'll run our time concurrent with the feds." Id. at 149. Petitioner testified that he would not have entered into a plea if he had known his federal sentence would run consecutively to his state sentence. Id.

Petitioner further testified that he was confused when the trial judge stated Petitioner had ten days to appeal. According to Petitioner, trial counsel stated, "[T]he judge has to tell you that but I don't see where the court erred." Id. at 141. Under cross-examination, Petitioner admitted he had affirmed to the trial judge during the plea colloquy that (1) he was not under the influence of any mind altering substances; (2) he did not have any mental, emotional, or nervous conditions that would interfere with his judgment; and (3) he was pleading guilty of his own free will. Id. at 166-67.

The PCR judge filed an order of dismissal on March 8, 2013. ECF No. 18-2, 3-27. The PCR judge determined that Petitioner's testimony as to his alleged mental health problems and his inability to recall the incident to be not credible. The PCR judge found that trial counsel's testimony to be credible. The PCR judge determined that trial counsel reasonably relied on his own perceptions of Petitioner based on their numerous interactions and made an objectively reasonable decision not to have Petitioner mental evaluated prior to trial. The PCR judge further found Petitioner failed to prove prejudice from trial counsel's failure to seek a mental evaluation. Id. at 9-10. According to the PCR judge, Petitioner "failed to produce anything other than his own incredible testimony and pure speculation as to what the result of such an evaluation would be." Id. at 11.

The PCR judge next determined that Petitioner's testimony regarding the voluntariness of his guilty plea to be not credible, and that trial counsel's testimony was credible. Id. at 14. The PCR judge found that trial counsel adequately advised Petitioner so as to allow Petitioner to make an

intelligent, informed, and voluntary decision as to whether to accept a plea offer. The PCR judge further noted that it was clear from the record that the trial judge would have imposed a life without parole sentence on Petitioner had the jury returned a verdict of guilty. Id. at 15. The PCR judge therefore determined that counsel's representation was thorough and in line with the high legal standards demanded of criminal defense attorneys. Id. Further, the PCR judge stated Petitioner failed to demonstrate that but for trial counsel's alleged deficiencies, he would have continued with trial. Id.

Next, the PCR judge found trial counsel's decision to not highlight nonobjectionable testimony by objecting, and thus having the question asked multiple times, to comprise a reasonable trial strategy. Moreover, the PCR judge determined that Petitioner showed no prejudice because the testimony at issue would have been admitted regardless of an objection to a leading question. Id. at 17. Regarding trial counsel's failure to object to the trial judge's alleged bias, the PCR judge noted that recusal is appropriate in proceedings "'in which his impartiality might reasonably be questioned, including instances where he has a personal bias or prejudice against a party.'" Id. at 19 (quoting Koon v. Fares, 666 S.E.2d 230, 34 (S.C. 2008)). The PCR judge determined that Petitioner failed to show judicial bias sufficient to warrant counsel requesting recusal. The PCR judge further determined that Petitioner failed to show prejudice because Petitioner understood it was his decision to accept the plea offer and that he ultimately did so in an effort to avoid a sentence of life without the possibility of parole. Id. at 20.

Regarding Petitioner's contention that trial counsel was ineffective for failing to ensure the federal and state sentences would run concurrently, the PCR judge found Petitioner's testimony to be not credible on this issue, and trial counsel's testimony to be credible. The PCR judge determined

that Petitioner was fully advised and aware that he would be pleading guilty with no guarantee that his federal and state sentences would run concurrently. Id. at 22. The PCR judge also found "no reasonable probability that had [Petitioner] known he would be serving a forty-three (43) year sentence instead of a forty (40) year sentence, he would not have pled guilty but rather continued with the trial to face a near certain [life without possibility of parole] sentence." Id. at 23.

Finally, the PCR judge found credible trial counsel's testimony regarding his general practice to advise of the right to appeal. The PCR judge observed that the trial judge specifically advised Petitioner of his right to appeal during the course of the plea. In addition, the PCR judge found no evidence in the record to indicate Petitioner ever requested an appeal be filed, or to show that trial counsel reasonably believed Petitioner wanted to appeal. Id. at 24. The PCR judge further determined that Petitioner failed to establish any nonfrivolous grounds existed for an appeal. Id. at 25. For all these reasons, the PCR judge concluded that Petitioner failed to establish any constitutional violations or deprivations. Therefore, the PCR judge denied and dismissed Petitioner's PCR application with prejudice. Id. at 27.

Petitioner filed a motion for reconsideration pursuant to S.C. R. Civ. P. 59, which was denied by order dated July 19, 2013. ECF No. 18-2, 28. Petitioner, through counsel, then sought a writ of certiorari from the South Carolina Supreme Court. Petitioner raised the following grounds for relief:

    1.    Did the circuit court err in holding Petitioner's trial counsel was not ineffective, even though trial counsel failed to object to or intervene in the coercive plea proceedings?

    2.    Did the circuit court err in holding Petitioner's trial counsel was not ineffective for failing to file a direct appeal from the guilty plea?

ECF No. 18-4, 3.

The petition for a writ of certiorari was denied by order dated November 7, 2014. ECF No.

18-7. The remittitur was issued on November 25, 2014. ECF No. 18-8.

In his § 2254 petition, Petitioner raises the following issues:

Ground One: The state courts failed unreasonably to recognize that the petitioners sixth amendment right to effective trial counsel was denied when trial counsel failed to object to the coercive atmosphere of the plea proceeding created by trial judge when he held and voiced a view of the petitioner being guilty before the trial began and before the petitioner presented his case and as a result the trial judge then directed the states attorney to give the petitioner a deal and a time limit making himself friend to one party and foe to the other instead of remaining neutral thus violating federal rules of court and making the guilty plea involuntary.

Ground Two: The state courts failed unreasonably to recognize that the petitioners sixth amendment right to effective trial counsel was denied when counsel failed to file a direct appeal based on the coercive plea proceeding and because trial counsel when asked by the petitioner, "Why is the judge telling me, that I can appeal, when you told me that I have no rights to an appeal, since I was pleading," never discussed or explained being able to file a direct appeal.

Ground Three: The state courts failed unreasonably to recognize that the petitioner's sixth amendment right to effective trial counsel was denied after trial counsel failed to investigate the petitioner's mental health.

Ground Four: The lower state court erred by failing to recognize that petitioners 6th amendment right to effective counsel was denied when counsel failed to ensure that the Petitioner could serve his Federal time first.

ECF No. 1, 10; ECF No. 1-1, 1-3 (errors in original).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred

to United States Magistrate Judge Thomas E. Rogers, III for a Report and Recommendation. The

petition is governed by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996.

Respondent filed a motion for summary judgment on June 12, 2015. By order filed June 15,

2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the

summary judgment procedures and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on July 22, 2015.  On November 30, 2015, the Magistrate Judge issued a Report and Recommendation in which he determined that the PCR judge's findings and conclusions were supported in the record and not contrary to established law as to Grounds One and Two.  The Magistrate Judge further found that Grounds Three and Four are procedurally defaulted because they were not raised to the South Carolina Supreme court in the petition for writ of certiorari.  Accordingly, the Magistrate Judge recommended that Respondent's motion for summary judgment be granted.  Petitioner filed objections to the Report and Recommendation on December 15, 2015.

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.  28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.  Id.  This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed.  Id.

## II.  DISCUSSION

A writ of habeas corpus shall not be granted for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The limited scope of federal review of a state petitioner's habeas claims is grounded in fundamental notions of state sovereignty. Richardson v. Branker, 558 F.3d 128, 138 (4th Cir. 2012) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)). When a federal court adjudicates a habeas corpus petition brought by a state prisoner, that adjudication constitutes an intrusion on state sovereignty. Id. (citing Harrington, 562 U.S. at 103). A federal court's power to issue a writ is limited to exceptional circumstances, thereby helping to ensure that "'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'" Id. (citing Harrington, 562 U.S. at 103). The restrictive standard of review "'further[s] the principles of comity, finality, and federalism.'" Id. (citing Williams v. Taylor, 529 U.S. 362, 364 (2000)). "'The pivotal question is whether the state court's application of the [applicable federal legal] standard was unreasonable.'" Id. (quoting Harrington, 562 U.S. at 103). So long as fairminded jurists could disagree on the correctness of a state court's decision, a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. Id. (citing Harrington, 562 U.S. at 102).

Petitioner contends that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner first must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687–88. In making this determination, a court considering a habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. However, an error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  Id. at 691-92 (citing United States v. Morrison, 449 U.S. 361, 364–65 (1981)).  "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692.

In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court discussed the application of the rule regarding deficient performance in cases where the defendant does not go to trial, but instead enters a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 57-59 (internal citations omitted).

Law/Analysis

A.    Failure to Object to Coercive Plea (Ground One)

Petitioner contends the Magistrate Judge erred in not finding trial counsel ineffective for failing to object to the trial judge's partiality.  Petitioner argues that he would have continued to verdict had the trial judge not interrupted the trial, and that, even though the plea offer was

advantageous, it was accepted as a result of pressure by the trial judge.  The court disagrees.

For a guilty plea to be valid, the Constitution imposes the minimum requirement that the plea be the voluntary expression of the defendant's own choice.  United States v. Harper, 627 F. App'x 262, 262 (4th Cir. 2016) (quoting United States v. Moussaoui, 591 F.3d 263, 278 (4th Cir. 2010)).  In evaluating the constitutional validity of a guilty plea, courts look to the totality of the circumstances surrounding the plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness.  Id. (quoting Moussaoui, 691 at 278).  As the Magistrate Judge correctly observed, the trial judge conducted a colloquy with Petitioner in which Petitioner averred that he understood his rights, that he wanted to plead guilty, and that he was guilty.  Petitioner's objection is without merit.

B.     Failure to File Direct Appeal (Ground Two)

The Magistrate Judge found that the PCR judge's findings regarding trial counsel's discussions with Petitioner to be entitled to deference.  The Magistrate Judge further determined that Petitioner failed to show that trial counsel was ineffective under Roe v. Flores-Ortega, 528 U.S. 470 (2000), in that (1) there was no evidence that trial counsel disregarded specific instructions from Petitioner to file a notice of appeal, and (2) there was no reason for trial counsel to think (a) a rational defendant would want to appeal, or (b) that Petitioner in particular reasonably demonstrated to trial counsel that he was interested in appealing.  Id. at 477, 480.  Petitioner contends that trial counsel's inability to remember if he discussed the right to appeal with Petitioner was evidence of a violation of an established federal law.  The court disagrees.

In Roe, the Supreme Court noted, among other things, that

a highly relevant factor in this inquiry will be whether the conviction follows a trial

16

> or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

528 U.S. at 480.

In this case, Petitioner received even a more favorable sentence than that bargained for, and Petitioner did not expressly reserve any appeal rights. As the Magistrate Judge noted, Petitioner entered a guilty plea after three days of incriminating evidence and after admitting to trial counsel that he was, in fact, guilty of the murder. In addition, Petitioner has failed to set forth any nonfrivolous grounds for appeal, or asserted that trial counsel disregarded a specific request to file a notice of appeal. Petitioner's objection is without merit.

C.     <u>Failure to Investigate Mental Health and to Ensure Concurrent Sentences</u> (Grounds Three and Four)

The Magistrate Judge determined that Grounds Three and Four are procedurally barred because they were not raised to the South Carolina Supreme Court. The Magistrate Judge further found that Petitioner has not demonstrated cause and prejudice for his procedural default. Specifically, the Magistrate Judge observed that ineffective assistance of appellate PCR counsel does not constitute cause. <u>See</u> <u>Johnson v. Warden</u>, 2013 WL 856731 at *1 (4th Cir. March 8, 2013). Petitioner asks the court to review Grounds Three and Four as an equitable matter because PCR appellate counsel "took it upon herself to abandon these preserved issues creating a procedural bar."

Federal courts must rigorously enforce the total exhaustion rule in order to give state courts the first opportunity to review all claims of constitutional error. <u>Rose v. Lundy</u>, 455 U.S. 509, 519

(1982).  The Supreme Court has explained that:

> strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.  To the extent that the exhaustion requirement reduces piecemeal litigation, both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.

Id. at 520.

Petitioner is required to squarely present all issues to the South Carolina appellate courts to avoid procedural default upon federal habeas review.  See Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999).  Petitioner failed to do so.  Petitioner's objection is without merit.

### III.  CONCLUSION

For all these reasons, the court concludes that the PCR judge's rulings were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Respondent's motion for summary judgment (ECF No. 17) is **granted**.  Petitioner's § 2254 petition is denied and dismissed, with prejudice.

### CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84

(4th Cir.2001).  The court concludes that Petitioner has not made the requisite showing.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 30, 2016

**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order
pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**

19